OPINION
Terrace Creek Association and its individual members (hereinafter collectively referred to as "Terrace Creek") appeal from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of the estate of Dale Smith ("Smith")[1] and Woolpert Engineering Company ("Woolpert").
In the 1980's, Smith began developing the Terrace Creek Subdivision in Washington Township. The subdivision consisted of a thirty-two acre tract of land that was divided into twelve lots, to be sold for $150,000 to $250,000 each. In 1985, Smith entered into a contract with Woolpert under which Woolpert was to design two retention ponds for the subdivision.[2]
Smith then constructed the retention ponds according to Woolpert's designs. Shortly thereafter, Smith began selling the lots.
On April 24, 1986, Smith filed a document with the Montgomery County Recorder entitled "Declaration of Covenants, Conditions, Restrictions, and Assessments for Terrace Creek, a Planned Residential Community" ("the declaration"). The declaration, which is a total of twenty-three pages long with several attached exhibits, states on the first page in the "Recitals" section, paragraph "B" that: "The Declarant [Smith] intends to create on the Property a high-quality, single-family residential community, with private streets, open space, and other common facilities for the benefit of said community. Declarant's general plan is to construct such facilities on the Common Area, and to prepare the remaining portion of the Property as buildable lots for sale to Persons and/or Builders for the construction of detached, single-family dwellings thereon. Declarant also intends to create two storm-water retention ponds on certain lots and not on Common Area."
The declaration, which was incorporated into the deeds for each lot within the subdivision, also provided in Article Four that the Terrace Creek homeowner's association (Terrace Creek) has "the obligation to maintain and repair the Water Retention Areas for the benefit of the entire community of homes on the Property from a water management standpoint." In Article Seven, the declaration provided that: "The ponds and drainage channels shall at all times be maintained in such manner and such standards that (i) they are of neat and clean appearance, free of excess silt, scum and algae, and (ii) they will not create a detrimental condition to any owner or detrimental appearance to the community. To these ends, the [Terrace Creek] Association shall take such steps and use such equipment as reasonably necessary to maintain the same in a high quality working condition."
During construction in the subdivision in 1988 and 1989, Smith had 150 to 180 truckloads of silt removed from the retention ponds. In 1998, he contracted with Pyper Construction to have more silt removed from the ponds.
This case has a long and complicated procedural history. On August 28, 1997, Terrace Creek filed a complaint against Smith, his wife,[3]
Woolpert, and the Montgomery County Engineer in which it alleged that the retention ponds had been negligently designed and constructed. The complaint included eight causes of action. Smith then filed a cross-claim against Woolpert in its answer of October 7, 1997. In September and October of 1998, Woolpert, Smith, and the Montgomery County Engineer filed motions for summary judgment. On June 10, 1999, the trial court sustained Woolpert's and the County Engineer's motions for summary judgment with respect to Terrace Creek's claims. The trial court also sustained Smith's motion for summary judgment with respect to all of Terrace Creek's claims except one, the breach of warranty claim. The trial court also dismissed Smith's cross-claim against Woolpert; however, that claim was subsequently reinstated upon appeal to this Court.[4]
On December 11, 1998, Terrace Creek filed a motion to amend its complaint to add a claim for third-party beneficiary breach of contract against Woolpert. The trial court denied that motion on March 2, 1999. Terrace Creek then filed a motion for reconsideration, which the trial court denied on June 10, 1999. Terrace Creek again requested that the court reconsider its decision on July 28, 1999, and the court again denied the motion on October 1, 1999.
On October 9, 2001, Smith filed a motion for summary judgment with respect to Terrace Creek's breach of warranty claim. Also on that date, Woolpert filed a motion for summary judgment with respect to Smith's cross-claim against it. Oral arguments were held on both motions on November 20, 2001. On December 7, 2001, the trial court overruled Woolpert's motion for summary judgment with respect to Smith's cross-claim, and sustained Smith's motion for summary judgment with respect to Terrace Creek's breach of warranty claim.[5]
Terrace Creek appeals, raising two assignments of error.
"THE TRIAL COURT ERRED IN DETERMINING THAT THE CONTRACT ENTERED INTO BETWEEN THE APPELLANTS AND APPELLEE TO CREATE A HIGH-QUALITY COMMUNITY DID NOT INCLUDE THE WATER RETENTION PONDS."
Under this assignment of error, Terrace Creek argues that the trial court erred in granting Smith's motion for summary judgment with respect to its breach of warranty claim. It alleges that the declaration, through the language cited above, created a warranty that Smith would deliver high-quality retention ponds. This warranty has been breached, according to Terrace Creek, because the retention ponds fill with silt and have to have that silt removed too often. As a result, the ponds act more as sedimentary basins than retention ponds and are unattractive, detracting from the property values of the homeowners.
The trial court, in reviewing the cited language, concluded that the paragraph setting forth Smith's intent to create a high-quality community did not set forth his intent to construct high-quality retention ponds. The court therefore concluded that there was no warranty that the ponds would be high-quality and granted summary judgment in favor of Smith on the breach of warranty claim.
Our review of the trial court's decision to grant summary judgment isde novo. See Helton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See State ex rel. Grady v.State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183, 1997-Ohio-221,677 N.E.2d 343; Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 65-66, 375 N.E.2d 46.
We do not believe that the language relied upon by Terrace Creek created a warranty for retention ponds that were high-quality in function and appearance. We are not convinced that a paragraph in the "Recitals" section of the declaration could create a warranty in the first place. Assuming that it could, however, we do not believe that this language does so. The declaration at no point states that Smith warranted that the retention ponds would be high-quality. In fact, the declaration does not even warrant that the facilities on the common area would be high quality, and it expresses merely a general intent that the community itself would be high quality.
The trial court noted that the retention ponds were discussed in a separate sentence and that that sentence did not reference "high-quality" construction. We find this point to be significant. The paragraph in the "Recitals" contains three sentences. The first of these sets forth Smith's intent to create a high-quality community. The second states the "general plan" to create streets, open space, and common facilities on common area. The third states that there will also be two retention ponds on lots rather than common area. This sentence structure indicates Smith's aspiration to create a high-quality community. However, we cannot interpret this paragraph to warrant the construction of high-quality retention ponds. In his deposition, Smith indicated that he constructed the ponds because the county required it, not because he wanted to enhance the community with them.
Terrace Creek argues that the paragraph in the "Recitals" section should be read in context with paragraphs in Article Four and Article Seven stating that Terrace Creek shall have the responsibility of maintaining the ponds. The first of these states that Terrace Creek has "the obligation to maintain and repair the Water Retention Areas for the benefit of the entire community of homes on the Property from a water management standpoint." The second states that Terrace Creek shall maintain the ponds so that "(i) they are of neat and clean appearance, free of excess silt, scum and algae, and (ii) they will not create a detrimental condition to any owner or detrimental appearance to the community." It further notes that "the [Terrace Creek] Association shall take such steps and use such equipment as reasonably necessary to maintain the same in a high quality working condition." Terrace Creek argues that the fact that it is to "maintain" the ponds in a high-quality condition necessitates a finding that the ponds were to be delivered in a high-quality condition.
These sections of the declaration contemplate the very problem about which Terrace Creek complains. It was anticipated that there would be a build-up of silt in the retention ponds, and it is the responsibility of Terrace Creek to remove that silt. Therefore, the fact that there is, in fact, a build-up of silt does not breach any obligation of Smith. Rather, the homeowners all purchased their lots with the knowledge that they would be responsible for maintaining the ponds and removing silt. Furthermore, Terrace Creek largely seems to be arguing that the ponds are not attractive. There is no evidence that they do not, in fact, control run-off water. Smith did not warrant in the declaration that the ponds would be attractive, that they would not collect silt, or that they would only collect silt at a certain rate. He did not warrant that they would be "high-quality." He stated only that he intended to construct two retention ponds on certain lots within the community and that it would be the responsibility of Terrace Creek to maintain those ponds in working order and neat and clean appearance.
We therefore conclude that the trial court did not err in concluding that the language of the declaration did not create a warranty that the retention ponds be "high-quality." Summary judgment on Terrace Creek's breach of warranty claim was therefore proper.
The first assignment of error is overruled.
"THE TRIAL COURT ERRED WHEN IT DENIED TERRACE CREEK'S REQUEST TO AMEND COMPLAINT."
Under this assignment of error, Terrace Creek claims that the trial court erred in denying its motion to amend the complaint to add a claim for third-party beneficiary breach of contract. In doing so, the trial court concluded that Terrace Creek could not establish any set of facts that would entitle it to relief on such a claim.
Civ.R. 15(A) provides that leave to amend a complaint "shall be freely given when justice so requires." See, also, Peterson v. Teodosio (1973),34 Ohio St.2d 161, 175, 297 N.E.2d 113. The decision whether to grant such a motion lies within the discretion of the trial court. Id. However, "where it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion." Id.
In this case, we agree with the trial court that Terrace Creek did not set forth a claim upon which relief could be granted. The trial court relied on this Court's decision in Brewer v. H R Concrete, Inc. (Feb. 5, 1999), Montgomery App. No. 17254. In that case, we noted that "[o]nly a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio." Id., citingMergenthal v. Star Banc Corp. (July 28, 1997), Warren App. No. CA96-10-107. The Brewers in that case were seeking to bring a claim of third-party beneficiary breach of contract against a subcontractor. Id. Generally, landowners and subcontractors are not in privity of contract. Id. We concluded that "there must be evidence, on the part of the promisee, that he intended to directly benefit a third party, and not simply that some incidental benefit was conferred on an unrelated party by the promisee's actions under the contract." Id. In Brewer, there was not a written contract, and we determined that there was no evidence in the record to indicate that the subcontractor intended to benefit the Brewers.
This case is similar. We do not have a copy of the written contract from which we could determine that Woolpert intended to benefit Terrace Creek and the individual homeowners. While the lack of the contract does not necessarily defeat Terrace Creek's proposed claim, there is no evidence in the record to indicate that Woolpert intended more than an incidental benefit to Terrace Creek. On the contrary, the evidence shows that the contract was intended to benefit Smith, who was developing this tract of land and needed retention ponds to do so. While the ponds may have provided an incidental benefit to Terrace Creek, this is not sufficient to support a claim for third-party beneficiary breach of contract. Therefore, the trial court did not err in refusing to allow Terrace Creek to amend its complaint to add such a claim.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, J. and YOUNG, J., concur.
[1] Dale Smith was originally named as the defendant in this action. However, he died during this litigation, and his estate was substituted as a party.
[2] Both Smith and Woolpert have admitted to the existence of a written contract regarding the ponds; however, neither has been able to produce a copy of that contract.
[3] The claims against Smith's wife were voluntarily dismissed.
[4] The claim was dismissed because neither party could produce a copy of the contract. Following the dismissal, Smith filed a motion for reconsideration, and the claim was reinstated on June 10, 1999 when the trial court concluded there was sufficient evidence to show that a contract had existed. Woolpert filed another motion for summary judgment with respect to the cross-claim on March 1, 2000, which was granted by the trial court. Smith appealed that decision to this Court, and we reversed, concluding that a genuine issue of material fact existed.
[5] The trial court noted that its decision overruling Woolpert's motion for summary judgment with respect to Smith's cross-claim had "no practical effect" given its decision sustaining Smith's motion for summary judgment with respect to Terrace Creek's claims. However, it stated that a ruling was appropriate because the motion was pending before the court and because Terrace Creek was expected to pursue this appeal.